# In the United States Court of Federal Claims

No. 08-832T

(Filed March 2, 2012)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| **ANDRE B. ERLICH and** <br> **TERESA I. POZNANSKI-ERLICH,** <br><br> Plaintiffs, <br><br> v. <br><br> **THE UNITED STATES**, <br><br> Defendant. | Partial summary judgment; foreign tax credit, 26 U.S.C. § 901(b)(1); Section 317(b)(4) of the Social Security Amendments of 1977; Totalization Agreement, 42 U.S.C. § 433; plain meaning of "in accordance with the terms"; loss of tax credit for French social security payments by U.S. citizen employed by non-American corporation in France. |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Stuart E. Horwich*, Washington, D.C., for Plaintiff.

*Michael J. Ronickher*, Court of Federal Claims Section, Tax Division, Department of Justice, with whom were *John A. DiCicco*, Acting Assistant Attorney General, *Steven I. Frahm*, Chief, Court of Federal Claims Section, all of Washington, D.C., for Defendant. *Mary M. Abate*, Washington, D.C., of counsel.

### MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

The motions before the Court concern whether the plaintiffs, married United States citizens who jointly file their tax returns, are allowed foreign tax credits under 26 U.S.C. § 901(b)(1) for certain taxes paid to France during tax years 2004 through 2006. Both sides have moved for partial summary judgment. For purposes of these motions, five different categories of these taxes are assumed to be social security taxes,[1] requiring the Court to determine whether Section 317(b)(4) of the Social Security Amendments of 1977 ("SSA 1977") precludes plaintiffs from basing foreign tax credits on those particular taxes. The parties stipulate that, if Section 317(b)(4) does not apply, the government will not challenge plaintiffs' claim that these taxes are

---

[1] The parties have stipulated that, for purposes of this litigation, the French taxes *maladie* (national health insurance contribution), *vieillesse déplafonnée* (uncapped pension contribution), and *vieillesse TA* (pension contribution assessed on income within "*Tranche A*," that is, up to the social security ceiling) are social security taxes. *See* Jt. Stip. of Fact ¶¶ 1-3. Plaintiffs, for purposes of these motions, assume that the *contribution sociale généralisée* (health services tax) and *contribution pour le remboursement de la dette sociale* (tax to reduce health services debts) are also social security taxes. *See* Pls.' Second Mem. Supp. Mot. Partial Summ. J. at 4, 7.

creditable against their U.S. income tax liability under 26 U.S.C. § 901(b)(1). *See* Jt. Stip. of Fact ¶ 4.

Section 317(b)(4) reads:

> Notwithstanding any other provision of law, taxes paid by any individual to any foreign country with respect to any period of employment or self-employment which is covered under the social security system of such foreign country in accordance with the terms of an agreement entered into pursuant to section 233 of the Social Security Act shall not, under the income tax laws of the United States, be deductible by, or creditable against the income tax of, any such individual.

SSA 1977 § 317(b)(4), Pub. L. No. 95-216, 91 Stat. 1509. Section 233 of the Social Security Act, referenced in this provision, was added by Section 317(a) of SSA 1977, and authorizes agreements with foreign countries to establish "totalization arrangements" concerning the social security systems of our nation and those other countries. 42 U.S.C. § 433 (2006). Eligibility for social security benefits in the U.S., and presumably other countries, is earned when individuals accumulate a sufficient number of time periods of work credited under the social security system. *See* 42 U.S.C. § 414(a). A totalization agreement with another country must allow certain individuals who have contributed to the social security systems of both nations to combine the respective "periods of coverage" under each for purposes of determining entitlement to benefits, which are then prorated. 42 U.S.C. § 433(c)(1)(A), (C). By law, the agreement must also provide:

> (i) that employment . . . or any service which is recognized as equivalent to employment . . . under [the subchapter of title 42 governing the federal social security program] or the social security system of a foreign country which is a party to such agreement, shall . . . result in a period of coverage under the system established under this subchapter or under the system established under the laws of such foreign country, *but not under both*, and (ii) the methods and conditions for determining under which system employment . . . or other service shall result in a period of coverage . . . .

42 U.S.C. § 433(c)(1)(B) (emphasis added).

Since a "period of coverage" is defined as "a period of payment of contributions or a period of earnings based on wages for employment" under a social security system, 42 U.S.C. § 433(b)(2), a totalization agreement between two countries has the result of ensuring that individuals would not have to pay social security taxes based on the same wages to both countries. Accordingly, another provision of Section 317(b) of SSA 1977 amended the tax code to exempt wages from the employer and employee portions of the social security payroll tax

"[d]uring any period in which there is in effect" a totalization agreement "to the extent that such wages are subject under such agreement to taxes or contributions for similar purposes under the social security system of such foreign country." SSA 1977 § 317(b)(2); *see also* 26 U.S.C. §§ 3101(c), 3111(c) (2000).[2]

The foregoing is important because in 1987, an "Agreement on Social Security between the United States and the French Republic" ("Totalization Agreement"), and an "Administrative Arrangement" providing the procedural mechanisms for application of the Totalization Agreement, were signed by representatives of the United States and France. Pls.' Second Mem. Supp. Mot. Partial Summ. J. ("Pls.' Br."), Ex. A. The two agreements went into effect July 1, 1988. *See* Def.'s Opp'n to Pls.' Second Mot. Partial Summ. J. & Cross-Mot. Partial Summ. J. ("Def.'s Br."), App. D at A-20. The taxes giving rise to plaintiffs' claimed tax credits were levied by France upon the income of plaintiff Andre B. Erlich, a citizen of both France and the United States.[3] After working for over ten years in the United States for a U.S. subsidiary of the Dutch Antilles company Schlumberger Ltd., Mr. Erlich was reassigned to a French subsidiary of the company in late 1997, and since that time plaintiffs have lived in France while Mr. Erlich was employed by either French subsidiaries or the parent company. Def.'s Resp. to Pls.' Prop. Findings of Fact at 3-4. Thus, Mr. Erlich and his wife Teresa I. Poznanski-Erlich, a citizen of both the United States and Germany, *see id*. at 2, were French residents during the tax years in question, and the taxes at issue fell upon the income Mr. Erlich earned while working for a non-American employer.

The fact that Mr. Erlich's employers while he was working in France were non-American is at the center of plaintiffs' arguments concerning the availablity of the foreign tax credit. Regardless of the existence of the Totalization Agreement, Mr. Erlich's remuneration received from these employers would not have been subject to U.S. social security taxes --- as these taxes fall on wages received "with respect to employment," 26 U.S.C. §§ 3101(a), 3111(a), and "employment" outside the U.S. is defined as service performed "for an American employer." 26 U.S.C. § 3121(b)(B) (2006).[4] As was noted above, the enabling legislation requires that totalization agreements provide that after their effective dates, employment will "result in a period of coverage" (and, hence, may result in taxes or contributions) under the social security

---

[2] The social security tax provisions have subsequently been amended to clarify that a worker's wages are exempt from the U.S. taxes even when the worker has the option not to pay foreign social security contributions and so chooses. These provisions now state that wages "shall be exempt from the taxes imposed by this section to the extent that such wages are subject under such agreement exclusively to the laws applicable to the social security system of such foreign country." 26 U.S.C. §§3101(c), 3111(c) (2006).

[3] For purposes of these motions for partial summary judgment, the defendant assumes that the facts regarding the citizenship, employment, and tax history of Mr. Erlich are true. *See* Def.'s Resp. to Pls.' Prop. Findings of Fact at 2-5.

[4] A corporation is an American employer only when it is "organized under the laws of the United States or of any State." 26 U.S.C. § 3121(h)(5).

systems of either the U.S. or its foreign agreement partner, "but not under both." 42 U.S.C. § 433(c)(1)(B)(i). Plaintiffs maintain that since one of the two purposes of a totalization agreement is to avoid the situation where both signatories to the agreement seek to impose social security taxes on the same income of an individual, the agreement (for tax purposes) is relevant only to individuals facing this double taxation. *See* Pls.' Br. at 10-11.[5] Thus, plaintiffs argue, it is only when absent the totalization agreement an individual would be subject to social security taxes payable to both countries, that it can be said that taxes paid to just one country are "in accordance with the terms of" the totalization agreement, under Section 317(b)(4). Pls.' Br. at 18-19.

The Erlichs argue that "in accordance with the terms of" a totalization agreement means "caused by," as when the agreement is the "tie-breaker" deciding which of two nations seeking to impose social security taxes is requited. *See* Pls.' Opp'n to Def.'s Cross-Mot. for Partial Summ. J. & Reply to Def.'s Resp. ("Pls.' Reply") at 4, 9, 12; Tr. (Jan. 28, 2010) ("Tr.") at 26, 33. But they also argue that the purpose of Section 317(b)(4) was to address a circumstance in which a totalization agreement assigns taxing authority to a nation which otherwise may not have been imposing social security taxes --- the so-called detached worker situation. *See* Pls.' Br. at 11-13. Under a "detached worker" rule, as plaintiffs describe it, a worker sent from one nation to another to work for a relatively short period of time (up to five years under the Totalization Agreement) can be subject to the social security taxes of just the former country --- even where that country would not have taxed the individual in the absence of this term in a totalization agreement. *Id*. at 11-13, 15-17.[6] Plaintiffs speculate, without reference to authority or evidence, that Congress enacted Section 317(b)(4) to prevent foreign detached workers employed in the U.S. from enjoying both an exemption from U.S. social security taxes and a tax credit based on the social security taxes paid to another country. *Id*. at 12-13. It is not clear whether plaintiffs' theory is that Congress intended to eliminate the tax credits only for detached workers employed in the U.S. but used language broad enough to fortuitously capture individuals who pay a foreign

---

[5] The Court notes that the other purpose, the "totalization" of benefits, was identified by Congress in the SSA 1977 as *the* purpose of these agreements:

> The President is authorized . . . to enter into agreements establishing totalization arrangements . . . for the purposes of establishing entitlement to and the amount of old-age, survivors, disability, or derivative benefits based on a combination of an individual's periods of coverage under the social security system established by this subchapter and the social security system of such foreign country.

42 U.S.C. § 433(a).

[6] The Erlichs explain that in 1983 Congress amended the definition of "employment" for purposes of social security taxes, to include service deemed "employment" or its equivalent in a totalization agreement. Pls.' Br. at 17 (discussing 26 U.S.C. § 3121(b)). This extended taxing authority over the wages of detached workers employed by non-American employers abroad.

social security tax under a "tie-breaking" provision, or if it is that Congress first recognized the double-benefit problem because of the detached workers and intentionally devised a provision broad enough to eliminate the tax credits for all individuals who avoid paying the U.S. tax because of a totalization agreement. But in any event, plaintiffs can point to nothing to support their speculation that the detached worker situation motivated Congress to enact Section 317(b)(4).[7]

At bottom, plaintiffs maintain that because "Mr. Erlich is not avoiding U.S. social security tax in accordance with the provisions of a totalization agreement where both jurisdictions assert social security taxing rights," Pls.' Br. at 18, this means that "Mr. Erlich's liability for French social security taxes exists wholly independent of the French Totalization Agreement." *Id*. at 9. Thus, plaintiffs assert that the social security taxes were not paid to France "in accordance with the terms of" the Totalization Agreement. *See* Pls.' Reply at 12. And they argue that three revenue rulings incorrectly (and arbitrarily) interpreted section 317(b)(4) as applying where a totalization agreement exists or is in effect between the United States and the country imposing the social security taxes. Pls.' Br. at 15-17 & n.5 (discussing Rev. Rul. 79-291, 1979-2 C.B. 273; Rev. Rul. 80-94, 1980-1 C.B. 170; Rev. Rul. 81-39, 1981-1 C.B. 396).

Among other things, the government argues that under normal usage the phrase "'in accordance with' is much closer in meaning to 'in harmony with' than (as plaintiffs would have it) 'because of.'" Def.'s Reply in Supp. of Cross-Mot. ("Def.'s Reply") at 7. Defendant notes a dictionary definition of accordance as "agreement, conformity," and not causality. *Id*. (citing *Webster's New Collegiate Dictionary* 50 (9th ed. 1986)). The government's position is that section 317(b)(4) "bars foreign tax credits where there is a totalization agreement in place." Def.'s Br. at 6. In addition to discussing the plain meaning of the text of Section 317(b)(4), the context of the statutory scheme, and the language of the Totalization Agreement, *id*. at 14-20, defendant also discusses its view of the purpose and policy behind Section 317(b)(4) and totalization agreements, *see id*. at 20-23; Def.'s Reply at 5-6, which the Court finds unnecessary to the resolution of these motions.

To construe a statute, a court's "analysis begins with the language of the statute," and "where the statutory language provides a clear answer, it ends there as well." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) (internal quotation and citations omitted). In deciding whether sufficient clarity exists, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). When statutory language is plain, a court must follow it, and should not hunt for supposed purposes behind the statute that may rationalize contracting or expanding the plain meaning of the text. *See Henry E. & Nancy Horton Bartels Trust ex rel. Cornell Univ. v. United*

---

[7] Indeed, the fact that the tax code amendment to allow U.S. workers abroad to take advantage of the detached worker provisions of totalization agreements, *see supra* n.6, was not enacted as part of SSA 1977 would suggest that Congress was not focused on detached worker issues at the time Section 317(b)(4) was enacted.

*States*, 617 F.3d 1357, 1361 (Fed. Cir. 2010). Here, the Court has been given no reason to believe that in Section 317(b)(4) Congress used the phrase "in accordance with" to mean anything other than the usual "in agreement with" or "in conformity with." *See American Heritage Dictionary of the English Language* 9 (1976) (defining "accordance" as "[a]greement; conformity"); *Random House Dictionary of the English Language* 9 (unabridged ed., 1973) (same).[8] Under Section 317(b)(4), then, taxes are "paid by an[] individual to a[] foreign country with respect to a[] period of employment . . . which is covered under the social security system of such foreign country in accordance with the terms of" a totalization agreement when this payment is consistent with the obligation of the taxpayer under the agreement.

Plaintiffs would have the Court interpret Section 317(b)(4) as if it read that credits and deductions are lost *only* when the *sole* reason an individual did not pay U.S. social security taxes was because a totalization agreement gave the foreign country the exclusive coverage of that individual. This interpretation is predicated on the notion that totalization agreements govern the treatment of only individuals who would otherwise be covered under the laws of *both* parties to an agreement. This notion is not supported by the language of SSA 1977. As was discussed above, a provision of the enabling legislation requires that totalization agreements assign to just one of the signatories the power to impose social security taxes on the same work of an individual. *See* 42 U.S.C. § 433(c)(1)(B)(i). This provision is not limited to situations in which service is recognized as employment or its equivalent under the systems of *both* countries, but rather extends to "employment or self-employment, or any service which is recognized as equivalent to employment or self-employment under this subchapter *or* the social security system of a foreign country which is a party to such agreement." *Id*. (emphasis added).

Moreover, the Court notes that the provision of SSA 1977 that exempts individuals from U.S. social security tax when taxing rights are assigned to a foreign country under a totalization agreement expressed this by reference to "wages." 26 U.S.C. §§ 3101(c), 3111(c). This is understandable, since Congress need only exempt individuals who otherwise would be paying U.S. social security taxes, and these fall on wages, *see* 26 U.S.C. §§ 3101(a), 3111(a) --- which are in turn defined with reference to "employment" that is covered under our system. 26 U.S.C. §§ 3101(a), 3111(a), 3121(a),(b). Had Congress intended to limit the loss of tax credits or deductions under Section 317(b)(4) to individuals who would have paid U.S. social security taxes but for a totalization agreement, it could have easily cross-referenced 26 U.S.C. §§ 3101(c) and 3111(c) (which were added by Section 317(b)(2) of SSA 1977), or the terms "wages" or "employment" as used in 26 U.S.C. § 3121. It chose none of these options, and instead used language that does not even mention U.S. social security taxes avoided due to a totalization agreement. The plain language employed by Congress is not at all suited for the task which plaintiffs would assign to the provision.

Of course, whether the payment of social security taxes to a foreign country concerned a period of coverage in conformity (or consistent) with a totalization agreement requires scrutiny of the language of that agreement, as well. A particular totalization agreement may disclaim

---

[8] *See also Webster's Third New International Dictionary of the English Language Unabridged* 12 (1971) (defining "accordance" as "AGREEMENT, ACCORD").

coverage over individuals except when individuals are being taxed for the social security systems of both parties to the agreement. Plaintiffs, however, concede that the work in question is subject to only the French social security laws, under the language of the Totalization Agreement. *See* Tr. at 29-30. Article 3(a) of the Totalization Agreement provides that the agreement "shall apply to . . . persons who are or have been subject to the laws of either Contracting State and who are nationals of either Contracting State." Ex. A to Pls.' Br. at 4. Plaintiffs maintain that that Mr. Erlich fits this description. *See* Pls.' Prop. Findings of Uncontroverted Facts ¶¶ 2, 4-7. Article 5(1) of the Totalization Agreement provides that, subject to exceptions that are not relevant, "a person employed within the territory of one of the Contracting States shall, with respect to that employment, be subject to the laws of only that Contracting State . . . ." Ex. A to Pls.' Br. at 4.[9] Thus, under the terms of the agreement, Mr. Erlich's employment in France is not subject to the U.S. social security laws --- including provisions in the tax code and future amendments. *See id.* at 2-3 (Totalization Agreement, Article 2(1)(a) and 2(3)). Even were the tax code to be amended so that work abroad for non-American corporations was subject to U.S. social security taxes, the Totalization Agreement would continue to insulate individuals such as Mr. Erlich from the U.S. social security laws. It is plain that the French social security taxes paid by Mr. Erlich for his work in France were paid for periods of coverage in accordance with the terms of the Totalization Agreement.[10]

For the foregoing reasons, defendant's cross-motion for partial summary judgment is **GRANTED** and plaintiffs' motion for partial summary judgment is **DENIED**.

**IT IS SO ORDERED.**

                                                       s/ Victor J. Wolski
                                                    **VICTOR J. WOLSKI**
                                                    Judge

---

[9] Some provisions of the Totalization Agreement apply only when an individual is subject to social security taxes in both countries. *See* Ex. A to Pls.' Br. at 5 (Article 6(4), concerning airline personnel "who would otherwise be covered under the laws of both Contracting States"); *id.* at 6 (Article 10, extending certain provisions to "apply to persons regardless of their nationality who would otherwise be covered under the laws of both Contracting States").

[10] In any event, even were the Court to find the phrase "in accordance with the terms of" a totalization agreement to be ambiguous, the House Committee on Ways and Means' report on the legislation explains that this provision, originally section 308(b)(4) of the House bill, "provides that where an agreement is in . . . effect between the United States and another country, an individual may not claim an income tax deduction or credit for the payment of the foreign social security tax." H.R. Rep. No. 95-702, pt. 1, at 89 (1977) (the ellipsis is inserted to indicate an apparent type-setting error, as the first lines of the fifth and seventh paragraphs on that page were obviously transposed).